IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ROBERT S. REYNOLDS,

           Plaintiff,

v.                                                Civil Action No. 3:12-cv-00779-JAG

DOUGLAS A. MIDDLETON,

           Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment. (Dk. Nos. 31 and 36.) Robert S. Reynolds, the *pro se* plaintiff, alleges four constitutional violations related to Henrico Code § 22–195[1] ("the Ordinance"): (1) a First Amendment free speech violation, (2) a Fourteenth Amendment due process violation, (3) a Fourteenth Amendment equal protection violation, and (4) a violation of the Contract Clause of the Constitution.[2]

The Court finds that the Ordinance satisfies scrutiny under the First Amendment. The Ordinance is content-neutral and reasonably regulates conduct. Reynolds has produced no

---

[1] Henrico County, Va., Ordinance to Amend and Reordain § 22–195 of the Code of Henrico (October 23, 2012).

[2] The plaintiff states in his motion for summary judgment that he seeks "partial summary judgment that Reynolds has penumbra rights under the Ninth Amendment (founded in the First Amendment and Due Process Clause of the Fourteenth Amendment), to seek association with others for the purpose of obtaining charitable donations, and to physically receive such donations." (Dk. No. 36 at 1.) Prior to filing his motion for summary judgment, Reynolds filed a "Memorandum in Support of Application of the Ninth Amendment" in this Court, without an accompanying motion, where he stated that "the Court should not require amendment of Reynolds' Complaint upon this issue [a Ninth Amendment violation], because it is presented in the nature of a counter-claim." (Dk. No. 22.) Reynolds cannot assert a counterclaim in this case because the defendant has not asserted a claim against him. *See* Fed. R. Civ. P. 13. Accordingly, because Reynolds did not seek leave to amend his complaint to add a Ninth Amendment claim, the Ninth Amendment claim it is not properly before the Court and the Court will not consider it.

support for his due process, equal protection, or Contract Clause claims. Accordingly, the Court GRANTS the defendant's motion for summary judgment on all counts (Dk. No. 31) and DENIES the plaintiff's motion for summary judgment (Dk. No. 36).

## I. Facts

Reynolds pays his rent and purchases food solely on the contributions he receives while sitting in the median strip of Henrico County roadways. Prior to October 23, 2012, the Henrico County Ordinance only prohibited solicitation from a person standing in the roadway, defined to include the median. On October 23, 2012, the County struck the word "standing" from the Ordinance. The amended Ordinance now prohibits people, whether standing or not, from soliciting in the roadway. The amended Ordinance reads:

> Sec. 22–195. Distributing handbills, soliciting contributions or selling merchandise or services in the highway.
> (a) It shall be unlawful for any person while ~~standing~~ in the highway to:
> (1) Distribute handbills, leaflets, bulletins, literature, advertisements or similar material to the drivers of motor vehicles or passengers therein on highways located within the county.
> (2) Solicit contributions of any nature from the drivers of motor vehicles or passengers therein on highways located within the county.
> (3) Sell or attempt to sell merchandise **or services** to the drivers of motor vehicles or passengers therein on highways located within in the county.
> (b) For purposes of this section, the term "highway" means the entire width of a road or street that is improved, designed, or ordinarily used for vehicular travel and the shoulder, the median, and the area between the travel lane and the back of the curb.

Henrico County, Va., Ordinance to Amend and Reordain § 22–195 of the Code of Henrico (October 23, 2012).

The County held a hearing before voting on the amendment. Both the defendant—Police Chief Douglas Middleton—and Reynolds spoke at the public hearing. The defendant asked the County to approve the proposed change in the interest of public safety.

## II. Standard of Review

A court may appropriately grant summary judgment when the movant establishes that no genuine dispute of any material fact exists. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). After an adequate period for discovery, Rule 56(c) mandates a grant of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). The non-movant may not rest on claims within its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Ultimately, the relevant inquiry in a summary judgment analysis consists of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. Discussion

Reynolds alleges four violations against Chief Middleton: (1) a First Amendment free speech violation, (2) a violation of Reynolds's Fourteenth Amendment due process rights, (3) a violation of Reynolds's Fourteenth Amendment equal protection rights, and (4) a violation of Reynolds's rights under the Contract Clause of the Constitution. Reynolds has failed to bring forward any evidence that supports his claims or creates a dispute as to a material fact.

### A. First Amendment Claim

In evaluating a free speech claim, this Court must first determine if the Ordinance at issue represents a content-neutral or content-based regulation. This classification matters because the government's power to regulate speech in a public forum is limited, but not foreclosed. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013). Public streets and sidewalks represent "the archetype of a traditional public forum." *Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011) (quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988)).

In a traditional public forum, the government may enforce a reasonable content-neutral regulation of the time, place, and manner of expression if the regulation (1) is content-neutral, (2) is narrowly tailored to serve a significant government interest, and (3) leaves open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). If a regulation represents a content-based regulation of expressive conduct in a public forum, however, the government may only enforce the rule if it represents the least restrictive means available to further a compelling government interest. *Id.*

The Ordinance at issue on its face does not distinguish between different types of contributions, the message on the handbills, or what goods an individual plans to sell in the roadway. The Ordinance prohibits all interactions between pedestrians in the roadway and

motorists. Neither Girl Scouts nor panhandlers may solicit from or interact with motorists. The Ordinance, however, does not go so far to prohibit all speech in the roadway. In fact, the Ordinance does not restrict speech that does not seek interaction with, and distraction of, drivers.

### *1. The Ordinance Represents a Content-Neutral Regulation on Speech*

The Fourth Circuit has enunciated a pragmatic rather than a formalistic approach to evaluating content neutrality. *Clatterbuck*, 708 F.3d at 556.

> [A] regulation is [a content-neutral] regulation of speech if (1) the regulation is not a regulation of speech, but rather a regulation of the places where some speech may occur; (2) the regulation was not adopted because of disagreement with the message the speech conveys; or (3) the government's interests in the regulation are unrelated to the content of the affected speech.

*Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 366 (4th Cir. 2012) (citation omitted). A content-neutral regulation reflects no "censorial" purpose. *Clatterbuck*, 708 F.3d at 556. The government does not justify the regulation because of the content of the regulated speech. *Id.*

In contrast, a content-based restriction exists when the government adopts the restriction *because of* the government's disagreement with the message that the speech conveys. *Id.* "[A] distinction is only content-based if it distinguishes content 'with a censorial intent to value some forms of speech over others to distort public debate, to restrict expression because of its message, its ideas, its subject matter, or to prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.'" *Clatterbuck*, 708 F.3d at 556 (quoting *Brown v. Town of Cary*, 706 F.3d 294, 301–02 (4th Cir. 2013)).

Here, Henrico County has provided evidence, which Reynolds has failed to contradict, that the County passed the Ordinance because of public safety concerns—not because of disagreement with Reynolds's message. (*See* Middleton Aff. ¶ 5, Dk. No. 32-1, Board of Supervisors Public Hearing Transcript at 3 *l.* 19 through 4 *l.*16, Dk. No. 32-2, and Middleton

Dep. at 27 *ll.* 13-23, Dk. No. 32-3.) The distinction the County has made by prohibiting speech that induces interactions between pedestrians and passing traffic and speech that induces no such interaction easily comports with its concern for public safety. Thus, the pragmatic approach to content-neutrality leads this Court to determine that the Ordinance represents a content-neutral ordinance.

### 2. The Ordinance Withstands Intermediate Scrutiny

A content-neutral ordinance need only pass intermediate scrutiny. *Wag More Dogs*, 680 F.3d at 369. Intermediate scrutiny requires that the Ordinance (1) further a substantial governmental interest, (2) be narrowly tailored to further that interest, and (3) leave open ample alterative channels of communication. *Id.*

First, the Ordinance furthers a substantial government interest: public safety. The County has a legitimate interest in public safety. *See Cox v. Charleston, South Carolina*, 250 F. Supp. 2d 582, 589 (D.S.C. 2003) ("It is well-settled that cities have a legitimate interest in protecting their citizens and ensuring that their streets and sidewalks are safe for everyone.") (citing *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 768 (1994)).

Second, the County has narrowly tailored the Ordinance to further its interest in protecting the public. In the First Amendment context, the narrow tailoring requirement does not require that the government "regulate by using 'the least restrictive or least intrusive means' available to achieve its goals, but it does prohibit the government from 'regulat[ing] expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" *Reyes v. City of Lynchburg*, 300 F.3d 449, 462 (4th Cir. 2002) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989)). The Ordinance only prohibits activities in the "highway," a narrow term including the area reserved for vehicular traffic and the medians. The

Ordinance does not prohibit activities in non-roadway locations. Additionally, the Ordinance only prohibits activities that require an interaction between the pedestrian and the motorist or his passenger, and does not prohibit more.

Finally, the Ordinance leaves open alternative channels of communication. The sidewalks and areas just past the shoulders remain fair game for begging, passing out handbills, or selling goods. The "First Amendment protects the right of every citizen to reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Hill v. Colorado*, 530 U.S. 703, 728 (2000) (citations and internal quotations omitted). Plenty of alternative channels of communication exist for Reynolds. Soliciting from the side of the road still provides Reynolds with his opportunity to win the attention of his listeners.

Thus, the Ordinance is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication. No genuine dispute of a material fact exists and the Ordinance represents a constitutional regulation as a matter of law. Accordingly, the Court grants summary judgment to the defendant.

### B. Fourteenth Amendment Due Process Claim

In Count Two, Reynolds alleges that the Ordinance violates his Fourteenth Amendment due process rights. Substantive due process forbids the government from infringing upon certain fundamental liberty interests, unless the government has narrowly tailored the infringement to serve a compelling state interest. *See Washington v. Glucksburg*, 521 U.S. 702, 720 (1997); *Reno v. Flores*, 507 U.S. 292, 305 (1993). Reynolds's due process argument relies on his assertion that the law recognizes his right to solicit in the median as a fundamental right.

Courts have not recognized the right to solicit in the median as a fundamental right, and "[t]he impairment of a [non-fundamental right] . . . demands no more than a 'reasonable fit'

between governmental purpose . . . and the means chosen to advance that purpose." *Reno*, 507 U.S. at 305; *see Glucksburg*, 521 U.S. at 720 (listing the "liberty" interests protected by the due process clause).

In this case, the Ordinance reflects a reasonable fit between the County's purpose of ensuring public safety in the roadways and the activities in the roadways that the Ordinance prohibits. Further, while the law recognizes First Amendment rights as fundamental rights, the government may impose reasonable time, place, and manner restrictions in a content-neutral regulation, as discussed above. Thus, because the Ordinance does not infringe a fundamental right, the law only demands a reasonable fit, which exists in the instant case.

### C. Fourteenth Amendment Equal Protection Claim

Reynolds, in Count Three, alleges that the Ordinance violates his equal protection rights under the Fourteenth Amendment because it (1) burdens his First Amendment rights and (2) prohibits activities in the median that require an interaction between pedestrians and vehicular traffic, but does not prohibit activities that do not require such an interaction.

Strict scrutiny does not apply to the Court's review of an ordinance unless the government (1) classifies based on a suspect class[3] or (2) burdens or denies a fundamental right. *See Cleburne, Tex v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

Individuals engaging in activities that require an interaction between pedestrians and motor vehicles in the roadways do not represent a suspect class. Additionally, as discussed above, the Ordinance does not impinge on Reynolds's First Amendment rights.

As a result, the Court does not apply strict scrutiny, but rather rational basis review. The Ordinance need only rationally relate to a legitimate state interest to pass constitutional muster.

---

[3] A suspect class consists of a class based on race, alienage, or national origin. *See Cleburne, Tex v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

*Cleburne*, 473 U.S. at 439–440. An Ordinance that prohibits interactions between pedestrians sitting or standing in the road and the drivers and passengers in cars passing by certainly has a rational relationship to the County's interest in public safety. Thus, Reynolds's equal protection claim fails and the Court grants summary judgment to the defendant.

### D. Contract Clause Claim

Fourth, Reynolds alleges that the Ordinance violates his rights under the Contract Clause of Article I, Section 10 of the Constitution. He argues that the Ordinance interferes with his contractual obligation to pay rent. A violation of the Contract Clause requires that the Ordinance substantially impair a contractual relationship. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244–45 (1978). The Ordinance does not affect the contractual obligations of either Reynolds or his landlord. Reynolds remains perfectly free to pay his rent and presumably retain his home. Thus, this claim also fails, requiring the Court to grant summary judgment to the defendant.

### IV. Conclusion

For the reasons stated above, the Court GRANTS the defendant's motion for summary judgment. The Court DENIES Reynolds's motion for summary judgment. Accordingly, the Court DISMISSES the case.

The Court will enter an appropriate order.

Let the Clerk send a copy to all counsel of record and mail a copy via U.S. Mail to the *pro se* plaintiff.

Date: October 15, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

9